Filed 10/2/23  Sukumar v. Ragir CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PONANI SUKUMAR, | B314776 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC126627) |
| v. | |
| TANYA RAGIR, as Executor, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig Karlan and Rafael Ongkeko, Judges. Affirmed.

Friedhofer and James E. Friedhofer; Hill, Farrer & Burrill, Steven J. Tomasulo and William A. Meyers for Plaintiff and Appellant.

Brown White & Osborn, Cynthia M. Cohen, Jack B. Osborn and Mark J. Andrew Flory for Defendants and Respondents.

_____

Plaintiff and appellant Ponani Sukumar (Sukumar) appeals the trial court's grant of summary judgment in favor of defendants David Andersen (Andersen) and David Andersen Pianos, Inc. (Andersen Piano) (collectively Defendants).[1]  The underlying complaint alleged breach of contract, misrepresentation, and negligence claims relating to the sale of a piano to, and maintenance of pianos for, Sukumar.  We affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

### *Complaint*

On October 28, 2016, Sukumar filed a complaint against Andersen, Andersen Pianos, All About Pianos, Inc. (All About Pianos), and Louis Spencer-Smith (Spencer-Smith), the president of All About Pianos, alleging four causes of action that are relevant here—breach of written contract (first cause of action), negligent misrepresentation (second cause of action), breach of oral contract (fifth cause of action), and negligence (sixth cause of action).[2]  The complaint alleged the following facts:

[1] Andersen died during the pendency of this matter. Respondent Tanya Ragir (Ragir) is executor of Andersen's estate. The estate includes the assets of Andersen Piano, which was dissolved prior to the trial court's order.

[2] The third cause of action for breach of written contract and the fourth cause of action for negligent misrepresentation were alleged as to All About Pianos and Spencer-Smith only. Neither is a party to this appeal, as they settled with plaintiff prior to the litigation of Defendants' summary judgment motion at issue here.

2

Sukumar is a collector of high-end pianos.  In the fall of 2014, Sukumar sought to add pianos to his collection with the assistance of Nikica Lesic (Lesic), an accomplished concert pianist.  Spencer-Smith advised Sukumar that Andersen had a desirable 1919 Steinway piano (the 1919 Piano).  On Sukumar's behalf, Lesic met with Andersen at Andersen's home to inspect the 1919 Piano.  Lesic found the 1919 Piano interesting, but believed that the " 'action' was too stiff" and that the piano would require repairs to improve the sound.  Andersen told Lesic that he could restore the 1919 Piano for a few thousand dollars so that it would produce "the optimal sound associated with Steinway pianos of that vintage."  Spencer-Smith represented that the 1919 Piano was a high-quality Steinway piano.  Neither Spencer-Smith nor Andersen advised Sukumar that many operational parts of the 1919 Piano had been replaced with incompatible parts that were not manufactured by Steinway.  In light of Andersen's reputation as a piano technician, Sukumar reasonably believed that Andersen had inspected the 1919 Piano and had an understanding of its true condition and the cost of restoring it.

On or about November 14, 2014, Sukumar entered into a written contract to purchase the 1919 Piano for $69,950.  The purchase contract identifies Sukumar as the buyer and All About Pianos as the seller.  Sukumar is informed and believes that Andersen actually owned the 1919 Piano and also qualifies as a seller under the purchase contract.  Sukumar relied on Andersen and Spencer-Smith's representations regarding the quality of the piano and the cost to restore it.  Sukumar would not have agreed to pay the purchase price absent their representations.

In or around February 2015, Sukumar sought out a skilled technician to service the 1919 Piano and other pianos in his collection. Sukumar retained Andersen, who Spencer-Smith recommended. In or around March 2015, Andersen performed work on several of Sukumar's pianos, for which he was paid several thousand dollars. Andersen's work on the pianos was substandard. Sukumar had his pianos serviced by a different technician who advised him that many of the parts in the 1919 Piano were replacement parts that were incompatible with the piano and prevented it from sounding and playing as it should. Sukumar has been advised and believes that it will cost $50,000 to properly restore the 1919 Piano. If Sukumar had been aware of the true cost of restoring the 1919 Piano, he would either not have purchased the piano or insisted on a dramatically lower purchase price.

The complaint alleges the following: Andersen is one of the sellers of the 1919 Piano. Andersen breached the 1919 Purchase Contract (first cause of action, breach of written contract) by delivering a piano that had incompatible parts that would be more expensive to repair than Andersen led Sukumar to believe, and Sukumar was damaged thereby. Andersen made material representations about the condition of the 1919 Piano that he had reason to believe were false (second cause of action, negligent misrepresentation). Sukumar reasonably relied on Andersen's misrepresentations in purchasing the 1919 Piano to his detriment. Sukumar orally contracted with Andersen and Andersen Piano to perform maintenance and service on unspecified pianos in his collection (fifth cause of action, breach of oral contract). Defendants breached that contract by failing to properly perform the services that were orally agreed upon, to

4

Sukumar's detriment. Finally, because he held himself out as a skilled piano technician and agreed to service Sukumar's pianos, Andersen had a duty to use a reasonable degree of care, skill, and expertise to perform maintenance and repair (sixth cause of action, negligence). Andersen breached that duty of care, damaging Sukumar.

Sukumar sought money damages, interest, costs of suit, and any other relief that the court deemed appropriate. Sukumar attached the purchase contract for the 1919 piano to the complaint.

## *Motion for Summary Judgment*

### **Motion for Summary Judgment and Supporting Evidence**

On January 30, 2020, Defendants filed the operative amended motion for summary judgment or summary adjudication, arguing that Sukumar failed to raise a triable issue of fact as to the first, second, fifth, and sixth causes of action in the complaint.

As to the first cause of action for breach of written contract, Defendants argued that there was uncontroverted evidence that: (1) Defendants did not enter into a written contract with Sukumar relating to the 1919 Piano; (2) Andersen was not a party to the purchase contract; (3) Andersen was not a signatory to the purchase contract; (4) Andersen never owned the 1919 Piano; (5) Andersen never performed restoration work of any kind on the 1919 Piano; (6) Andersen was not a party capable of entering into a contract for sale of the 1919 Piano; and (7)

5

Andersen could not and did not consent to the terms of the purchase contract.

As to the second cause of action for negligent misrepresentation, Defendants argued there was uncontroverted evidence that: (1) Andersen never spoke to or communicated with Sukumar prior to Sukumar's purchase of the 1919 Piano; (2) Andersen never made a positive assertion or representation regarding any material fact to Lesic regarding the 1919 Piano; (3) Andersen never performed any restoration work of any kind on the 1919 Piano—the 1919 Piano was only displayed at his home; (4) Andersen never represented to Lesic that he owned the 1919 Piano, that the 1919 Piano had all original parts, or that all parts of the 1919 Piano were correct or compatible for its restoration; (5) Sukumar had not adduced evidence to support his contention that any statement Andersen made to Lesic was false; (6) all competent evidence confirmed that any opinion Andersen gave Lesic regarding the methods of making a piano less stiff, one of which could be performed for about $5,000, were honest and reasonable; (7) Sukumar could not have reasonably relied on Andersen's alleged statement of opinion to Lesic, given Lesic's own expertise and recommendation and the fact that Lesic was paid a commission by the piano brokers; and (8) Sukumar's contention that Lesic inferred a representation from Andersen's neutral statement that it would cost $5,000 to repair the 1919 Piano in a certain manner is not sufficient to support a claim for negligent misrepresentation.

Regarding the fifth cause of action for breach of oral contract, Defendants argued: (1) Sukumar has not adduced evidence of material terms of an agreement with Defendants related to specific piano evaluation or maintenance that

Defendants have failed to perform; (2) Defendants did not breach any term of any agreement entered into with Sukumar related to a phased, incremental, and limited scope provision of piano evaluation and maintenance on a select number of pianos; (3) Sukumar cannot demonstrate a causal connection between any alleged breaches of agreement with Defendants and any purported damages; (4) Sukumar has not identified any specific damages of any kind related to the alleged breach of oral contract in response to special interrogatories and requests for production of documents; and (5) Sukumar has no evidence of damages in connection with Defendants' provision of limited piano evaluation and maintenance services on several pianos in Sukumar's collection.

Finally, with respect to the sixth cause of action for negligence, Defendants argued: (1) there is no evidence that Defendants breached a duty of care to Sukumar; (2) there is no evidence of a causal connection between any alleged breach of duty and damages sustained by Sukumar; (3) there is no triable issue of material fact on the question of causation and resulting damage to Sukumar, (4) Sukumar was unable to identify damages he sustained as a result of the purported breach with any particularity in response to special interrogatories and requests for production of documents; and (5) there is no basis to enforce the alleged breach of contractual promises through tort recovery.

Defendants concurrently filed a separate statement of undisputed material facts and Andersen's declaration.[3]

---

[3] Defendants also submitted various exhibits as attachments to their counsel's declaration, including; Steinway & Sons' announcement of the acquisition of the Louis Renner

Defendants listed Andersen's age and his ownership of Andersen Pianos in their separate statement of undisputed facts. Andersen declared he was 70 years old and the owner of Andersen Pianos. Neither Andersen nor Andersen Pianos had ever owned the 1919 Piano and neither ever rebuilt or refurbished the 1919 Piano. Anderson tuned the 1919 Piano and displayed it in his home while Spencer-Smith attempted to sell it. Andersen had no knowledge of its restoration history or components. Defendants were not party to the contract to sell the 1919 Piano and did not participate in negotiating its price. Andersen never communicated with Sukumar in any way prior to the sale of the 1919 Piano. Andersen spoke with Lesic on one occasion prior to the sale of the 1919 Piano, when Lesic came to Andersen's home to inspect and play the piano. Lesic indicated that he was working with Spencer-Smith on the sale of the 1919 Piano by a potential buyer. Lesic said that he loved the sound of the piano but that it felt "stiff." Andersen told Lesic that he knew of two methods to lessen the stiffness of the 1919 Piano—one reversible and one permanent. When Lesic inquired about the cost of repair, Andersen replied that he would charge $300 for the labor to perform the reversible repair, and $5000 for the labor and parts for the irreversible repair. Andersen never communicated to Lesic that he owned the 1919 Piano or that it had 100 percent Steinway parts.

Andersen's declaration states that in February 2015, after the sale of the 1919 Piano, he met with Sukumar for the first time. The two reached an understanding that Andersen and his assistant Nick Morello would evaluate a few of Sukumar's pianos.

company (for which Defendants requested judicial notice), correspondence, and discovery responses.

8

Following this evaluation, if the parties agreed, Andersen and Morello would return and perform any necessary maintenance on the pianos. Andersen and Morello performed the evaluations of the pianos, invoiced Sukumar, and were paid in full for the evaluations. They later performed maintenance on the pianos for which they were paid in part only. At Lesic's request, they performed maintenance on three pianos. After this maintenance was complete, Lesic sent emails indicating that he was not satisfied with Andersen's work. In particular, Lesic was dissatisfied with the condition of two Steinway B pianos, which Andersen had previously informed him were poorly rebuilt. Andersen and Morello only performed standard maintenance on these pianos; they had no role in the manufacture, rebuilding, or restoration of the pianos. Lesic also demanded that Andersen provide him with audio recordings of the pianos on which he had worked.

Andersen declared that it is standard to use parts manufactured by Renner in the rebuilding and refurbishing of Steinway pianos.

## Opposition to the Motion for Summary Judgment and Supporting Evidence

Sukumar filed an opposition to the motion for summary judgment on October 16, 2020.[4] Sukumar argued that if any fact contained in Defendants' statement of undisputed facts was disputed, the motion for summary judgment must be denied,

[4] Sukumar's filing in the trial court included a footnote indicating he did not contest summary adjudication against him of the first cause of action, for breach of written contract.

because all facts included by the moving party are *deemed* material, even if a particular fact is objectively immaterial. Among the 207 purportedly undisputed facts in Defendants' separate statement, one fact stated that Andersen was 70 years old, although he was 71 years old, and another stated that Andersen owned Andersen Pianos, although Andersen Pianos was dissolved prior to the filing of the motion for summary judgment. Based on these two facts alone, Sukumar argued that summary judgment should be denied. Sukumar further argued that he raised triable issues of material fact. He claimed that Andersen made two misrepresentations regarding the 1919 Piano: (1) that it was a "Steinway," and (2) that it could be properly restored for a few thousand dollars. Finally, Sukumar stated without elaboration that "there is ample evidence that Anderson's piano maintenance was clearly deficient, constituting breach of oral contract and/or negligence."

Sukumar also filed a separate statement of undisputed material facts, the declarations of Sukumar, Lesic, Steinway's General counsel Jennifer Wang, Michael Megaloudis (a Steinway employee who sells, repairs, and restores pianos), Michael Mohr (a director level Steinway employee with experience in these same areas), and a declaration of Sukumar's counsel attaching exhibits. Sukumar filed evidentiary objections to the declaration of Andersen and his counsel.

Sukumar declared that he met Lesic, who is a concert pianist, in 2009. Lesic assisted him in acquiring a collection of pianos. In late 2014, Sukumar became interested in the 1919 Piano, a Steinway D, which he found on All About Pianos's website. In November 2014, Lesic informed Sukumar that he had seen and played the 1919 Piano at Andersen's home, where it

10

was staged. Lesic liked the 1919 Piano but found it stiff. Andersen was an experienced piano technician, and had explained to Lesic that the problem could be remedied in one of two ways—one reversible and one not. Andersen could fix the piano by one of these two methods for less than a couple thousand dollars so that it could be played and sound as intended. Andersen referred to the piano as a "Steinway." Lesic recommended that Sukumar purchase the piano. Sukumar purchased the 1919 Piano for $69,950, which he believed to be above market price.

Sukumar's declaration stated that, in November 2014, he was very familiar with industry standards governing the sale of new and used Steinway Pianos. Under those standards, it would be inappropriate for a seller to refer to a piano as a "Steinway" if it did not have 100 percent Steinway parts. In light of his knowledge of industry standards and Andersen's experience as a piano technician, Sukumar took Andersen's comments to Lesic to mean that the 1919 Piano had 100 percent Steinway parts and could be fixed using 100 percent Steinway parts for a couple thousand dollars. Sukumar believed these statements were misleading. He would not have purchased the 1919 Piano if he understood its true condition. Sukumar's beliefs regarding industry standards for Steinway Pianos were listed as undisputed facts in his separate statement.

In February 2015, Sukumar retained Andersen to tune and perform maintenance on his pianos under Lesic's direction. Andersen's work was substandard.

Lesic's declaration was consistent with Sukumar's. Lesic stated that he had the same understanding as Sukumar regarding industry standards for Steinway pianos, and that he

11

also understood Andersen's comments as representations that the 1919 Piano had 100 percent Steinway parts and could be fixed using 100 percent Steinway parts for a couple thousand dollars. Lesic's beliefs regarding industry standards for Steinway Pianos were listed as undisputed facts in Sukumar's separate statement of undisputed material fact. Lesic had the 1919 Piano inspected by skilled and reputable piano experts, who informed him that it contained non-Steinway parts.

Lesic's declaration stated that, in February 2015, Sukumar retained Andersen to perform maintenance on some of his pianos under Lesic's direction. Andersen's work was substandard. Andersen re-pinned pianos although Lesic did not ask him to do so. Andersen also attempted to re-pin new pianos, but Lesic stopped him. Lesic and Sukumar asked Andersen to record the sound of the pianos prior to working on them, but Andersen did not do so. Lesic asked Andersen to work on the pianos one at a time so that Lesic could monitor his work. Instead, Andersen opened several pianos and worked on them simultaneously.

### **Reply and Trial Court's Rulings**

On May 28, 2021, Defendants filed a reply, counsel's declaration, and evidentiary objections.

Following a hearing on the matter, the trial court ruled on the parties' evidentiary objections and granted Defendants' motion for summary judgment or summary adjudication as to all four causes of action.

Of particular relevance here, the court sustained Defendants' objections to the statements in Sukumar and Lesic's declarations regarding industry standards for Steinway pianos,

their knowledge of those standards, and how that knowledge led them to believe that Andersen was misrepresenting the condition of the 1919 Piano.

With respect to the motion for summary judgment, the court observed that Sukumar failed to respond to the issues raised in the moving papers, instead arguing that the court should deny the motion for summary judgment because irrelevant facts, such as Andersen's age, were in dispute. The court ruled that Sukumar's citation to *Insalaco v. Hope Lutheran Church of West Contra Costa County* (2020) 49 Cal.App.5th 506 (*Insalaco*) did not require it to deny the motion based on a dispute over immaterial facts.

The court concluded that Sukumar failed to raise an issue of triable fact as to the first cause of action for breach of contract—there was no evidence of an agreement between the parties.

The court sustained the motion as to the second cause of action for negligent misrepresentation because Andersen made no affirmative representations about the quality of the 1919 Piano. Moreover, Sukumar could not have justifiably relied on statements by Andersen, as his assistant Lesic was well-trained regarding the quality of pianos. There was no evidence in the record that the 1919 Piano was not a Steinway, and it was not reasonable to interpret Andersen's statements as a representation that the 1919 Piano had 100 percent Steinway parts. There was also no evidence that Andersen's estimate of the cost of repairing the 1919 Piano was unreasonable.

With respect to the fifth cause of action, Sukumar failed to provide any evidence of the specific terms of the oral contract between himself and Andersen.

13

As to the sixth cause of action, Sukumar did not provide evidence of how Andersen's work was negligent or what damage was caused.

## DISCUSSION

### *Legal Principles*

A court may grant a motion for summary judgment or summary adjudication "only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179; see Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment has the burden of showing the court that the plaintiff has not established, and cannot reasonably expect to establish, the elements of the cause of action. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705.) Where, as here, a defendant moves for summary adjudication on a cause of action for which the plaintiff has the burden of proof at trial, the defendant "must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence necessary to establish at least one element of the cause of action. [Citation.] Only after the defendant carries that initial burden does the burden shift to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action.' " (*Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 702–703; see Code Civ. Proc., § 437c, subd. (p)(2).) "There is a triable issue

14

of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.)

"We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Mattei v. Corporate Management Solutions, Inc.* (2020) 52 Cal.App.5th 116, 122 (*Mattei*).) "We need not defer to the trial court and are not bound by the reasons for [its] summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85.) " 'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party . . . .' " (*United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1009.) "In deciding whether a material factual issue exists for trial, we 'consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence.' (Code Civ. Proc., § 437c, subd. (c).)" (*Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52.)

*Analysis*

**Separate Statement of Undisputed Facts (All Causes of Action)**

Sukumar primarily contends, presumably as to all causes of action (he does not specify), that Defendants' failure to follow

15

the requirements for a separate statement of undisputed facts contained in Code of Civil Procedure 437c and California Rules of Court, rule 3.1350 must result in denial of the motion for summary judgment.  We reject the contention.

Code of Civil Procedure section 437c governs the procedures for submitting a motion for summary judgment.  The statute states: "The supporting papers shall include a separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed.  Each of the material facts stated shall be followed by a reference to the supporting evidence.  The failure to comply with this requirement of a separate statement *may in the court's discretion* constitute a sufficient ground for denying the motion."  (Code Civ. Proc., § 437c, subd. (b)(1), italics added.)  California Rules of Court, rule 3.1350 specifies the necessary contents of a separate statement of undisputed facts, but does not mention any consequences of failure to comply with the rule.[5]

In the opposition to the motion for summary judgment in the trial court, Sukumar expressly disavowed the need to identify specifically *any* disputed fact other than Andersen's age and his ownership of Andersen Pianos to support this argument.  Beyond

[5] Rules of Court, rule 3.1350, subdivision (d) provides in relevant part:  "(1) The Separate Statement of Undisputed Material Facts in support of a motion must separately identify: [¶]  (A) Each cause of action, claim for damages, issue of duty, or affirmative defense that is the subject of the motion; and [¶] (B) Each supporting material fact claimed to be without dispute with respect to the cause of action, claim for damages, issue of duty, or affirmative defense that is the subject of the motion.  [¶]  (2) The separate statement should include only material facts and not any facts that are not pertinent to the disposition of the motion."

16

those two disputed facts, Sukumar only generally complained that Defendants' separate statement included excerpts of deposition testimony that did not constitute facts for the purposes of summary judgment and did not identify facts in dispute. Sukumar now argues in his opening brief on appeal that *several other facts* contained in Defendants' statement of undisputed facts are disputed and that their inclusion in the statement of undisputed facts renders those facts material, necessitating reversal. Sukumar forfeited any challenge based on these additional facts by specifically abandoning them in his opposition to the motion for summary judgment. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [" ' " 'we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived' " ' "].) Accordingly, we do not consider them here.[6]

With respect to the identified disputed facts (i.e., Andersen's age and purported ownership of Andersen Pianos), Sukumar argues that if any fact contained in Defendants' statement of undisputed facts is disputed, the motion for summary judgment must be denied—regardless of whether the disputed fact is material—because Defendants' inclusion of a fact in the statement concedes materiality. Sukumar relies on *Insalaco, supra*, 49 Cal.App.5th 506, *Nazir v. United Airlines,*

---

[6] Sukumar also failed to provide cites to the record. We review only arguments that are supported by record citations and consider all other arguments forfeited. (See *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 [appellant forfeits claim of error by failing to cite to record].)

17

*Inc.* (2009) 178 Cal.App.4th 243 (*Nazir*), and *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95 (*Reeves*). These cases do not support Sukumar's contention.

*Nazir* and *Reeves* each discussed the difficulties that are created when a defendant fails to meet the requirements of Code of Civil Procedure section 437c, subdivision (b)(1), as well as the potential consequences that may flow from that failure.[7] (*Nazir*, *supra*,178 Cal.App.4th at p. 252; *Reeves*, *supra,* 121 Cal.App.4th at pp.105–106.)  In both cases, however, the court reached the merits of the motion for summary judgment.  Neither case was decided on the basis of the defendant's failure to comply with Code of Civil Procedure section 437c or California Rules of Court, rule 3.1350.  (*Nazir*, at pp. 263–289; *Reeves*, at p. 106.)  To the extent these cases discussed the failure to meet the requirements for a separate statement of undisputed facts, they do not support reversal of the trial court's grant of summary judgment here.

*Insalaco*, *supra,* 49 Cal.App.5th 506, is readily distinguished from the case at bar.  *Insalaco* involved a dispute between residential property owners, their adjacent neighbors, and a church located uphill of the two residences, regarding the cause of a landslide that resulted in property damage.  (*Id.* at pp. 509–510.)  Defendant neighbors cross-complained against defendant church, and the church moved for summary judgment. (*Id.* at p. 510.)  In its separate statement of undisputed facts, the church asserted it was undisputed that " '[a] heavy rainfall such as occurred on the date of the incident would not be enough to cause the Wilkie Creek flow to infiltrate into the hill slope so as

---

[7] *Nazir* also referenced Rules of Court, rule 3.1350 in its discussion of the requirements for a separate statement of undisputed facts.  *Reeves* and *Insalaco* did not.

18

to reduce slope stability on Plaintiffs' [Insalacos'] property.' " (*Id.* at p. 521.) This statement relied on the church's expert's opinion as to the amount of rainfall that day. (*Ibid.*) When the neighbors disputed the amount of rainfall, the church responded that the amount of rain was immaterial. (*Ibid.*) The church also included in its statement of undisputed facts that "there are 'two ways in which water flow in a creek could destabilize a slope.' The water could erode the toe of the slope; '[o]r, a sustained rise in the water level in the creek could increase the amount of water in the slope.' " (*Ibid.*) The neighbors did not dispute this statement, but disputed the church's expert's opinion that the creek had not overflowed in the past month. (*Id.* at pp. 521–522.) The church countered that "the 'materiality of whether the creek ever overflowed its banks cannot be established.' " (*Id.* at p. 522.) Finally, the church stated that it was undisputed that " '[t]he channel of Wilkie Creek is stable and shows no evidence of recent erosion[,]' " which supported the church's argument that the landslide was not caused by erosion. (*Ibid.*) When the neighbors asserted that the creek had suffered erosion, the church responded that the erosion was also immaterial. (*Ibid.*)

Quoting *Nazir, supra*, 178 Cal.App.4th at page 252, the *Insalaco* court admonished the church for "ignor[ing] the advice from the leading practice treatise: 'PRACTICE POINTER: [¶] . . . [¶] Include only those facts which are *truly material* to the claims or defenses involved because the separate statement effectively *concedes* the materiality of whatever facts are included. Thus, if a triable issue is raised as to any of the facts in your separate statement, the motion must be denied!' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) § 10:95.1, [pp]. 10–35.)" (*Insalaco, supra*, 178

19

Cal.App.4th at p. 521.)  The *Insalaco* court held that the church could not " 'have it both ways.' "—i.e., it could not rely on a fact that it designated undisputed to argue in its favor on summary judgment and then deem the same fact immaterial when the neighbors disputed the fact.  (*Insalaco, supra*, 49 Cal.App.5th at p. 521.)

Here, unlike *Insalaco*, the two facts at issue do not form the underpinnings of Defendants' arguments.  Defendants will not "have it both ways," because whether disputed or undisputed, the facts that Sukumar contests—that at the time the motion for summary judgment was filed:  (1) Andersen was the owner of Andersen Pianos, and (2) Andersen was 70 years old—do not impact the viability of the causes of action before us.  *Insalaco* held that a defendant's inclusion of a fact in the separate statement of undisputed facts concedes that the included fact is material.  A defendant's concession does not end the analysis in all cases, however.  Even if we assume that Andersen's age and his ownership of Andersen Pianos are both disputed and material, our task is to independently review "whether the facts *not subject to triable dispute* warrant judgment for the moving party as a matter of law."  (*Mattei, supra*, 52 Cal.App.5th at p. 122, italics added.)  In this case, Defendants' concessions do not defeat the judgment in their favor, which is supported by other undisputed material facts.

## No Triable Issues of Material Fact (Second, Fifth, and Sixth Cause of Action)

Sukumar asserts that he has raised a triable issue of material fact as to the second, fifth, and sixth causes of action.[8] We reject these contentions.

Preliminarily, we emphasize that, contrary to his argument in the reply brief, Sukumar failed to challenge the trial court's evidentiary rulings in the trial court or in his opening brief to this court. Sukumar has waived any challenge to the trial court's evidentiary rulings by failing to raise them prior to his challenge in the reply brief. (*Employers Mutual Casualty Co. v. Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 350.) Sukumar cannot support his contentions with facts to which the trial court sustained objections.

*Second Cause of Action: Negligent Misrepresentation*

" ' " 'Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.' [Citations.]" [Citations.] If defendant's belief "is both honest and reasonable, the misrepresentation is innocent and there is no tort liability. [Citations.]" [Citation.] Justifiable reliance on the part of the plaintiff is also "an essential element

---

[8] The first cause of action alleged that Andersen breached a written contract by delivering a piano that was not a Steinway, because it did not have 100 percent Steinway parts. Sukumar has abandoned this argument in the opening brief, and we will not address it further here.

of a cause of action for negligent misrepresentation . . . ." [Citation.]  [¶] . . . Parties cannot read something into a neutral statement in order to justify a claim for negligent misrepresentation.  The tort requires a "positive assertion[.]" [Citation.]  "An 'implied' assertion or representation is not enough.  [Citation.]" ' " (*Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 827–828.) California law does not recognize a cause of action for negligent nondisclosure.  (*Byrum v. Brand* (1990) 219 Cal.App.3d 926, 940–941.)

Here, Sukumar appears to argue that Andersen misrepresented that (1) the 1919 Piano had 100 percent Steinway parts; and (2) the 1919 Piano could be repaired using 100 percent Steinway parts for less than a few thousand dollars.  As discussed below, the record does not include evidence that Andersen made false statements or that Sukumar's alleged reliance on Andersen's statements was justified.

Sukumar cites to the declarations of Andersen, Lesic, and Sukumar in support of his argument that Andersen made false statements to Lesic when Lesic visited Andersen's home to play and inspect the piano.[9]  Specifically, Sukumar asserts that Andersen's references to the 1919 Piano as a "Steinway" in his conversation was a misrepresentation that led Lesic, and in turn

_____

[9] Sukumar's brief also refers generally to "the facts outlined above" in support of his argument.  Which facts he refers to is not clear, and the items that he refers to as facts in the immediately preceding section include no record cites.  On appeal, appellant has the burden to show affirmative error; we will not "cull the record" in search of facts that might support his argument. (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116.)

22

Sukumar, to believe that the 1919 Piano had 100 percent Steinway parts.  Defendants do not contest that Andersen referred to the 1919 Piano as a "Steinway," but argue that the statement was not an affirmative representation about the piano's component parts.  We agree with Andersen that Sukumar fails to raise a triable issue of fact that the identified statement was a misrepresentation.

The trial court sustained Defendants' objections to the very statements in Sukumar and Lesic's declarations that Sukumar now relies on to characterize Andersen's use of the neutral word "Steinway" as a statement about component parts.  The trial court sustained Andersen's objections to the portions of both Lesic's and Sukumar's declarations that attempted to establish a broad rule for the piano industry that it is inappropriate to refer to a piano as a Steinway if it does not contain 100 percent Steinway parts, and also to statements meant to establish that Andersen must have used the word with this purported industry meaning.  Sukumar does not make any reasoned argument on appeal as to how these evidentiary rulings were incorrect and should be disregarded.  Accordingly, our record contains no evidence that Andersen's reference to a "Steinway" was false; moreover, we note the record does not support that Lesic or Sukumar had reason to believe that the mere reference to a piano as a "Steinway" was a warranty that the piano had 100 percent Steinway parts and that they could justifiably rely on Andersen's statement as such.  Lesic did not ask Andersen if he could verify that the piano's parts were 100 percent Steinway, and Andersen never affirmatively represented that they were.  Moreover, Andersen's casual reference to the 1919 Piano—which is depicted in the contract for sale that Sukumar attached to the complaint

23

as bearing the words "Steinway & Sons" in large letters on the front and one side—as a "Steinway" cannot be justifiably construed as a statement that the piano contained 100 percent Steinway parts.  To all appearances, the 1919 Piano was a Steinway piano.  It was reasonable for Andersen to refer to the 1919 Piano as a Steinway in an honest belief that it was.

There is also no evidence that Andersen's statement to Lesic that there were two ways in which he could repair the "action" of the 1919 Piano to make it sound as intended for less than a few thousand dollars was false.  Andersen did not claim that he would use 100 percent Steinway parts to repair the action, and there was no evidence presented that he could not make the 1919 Piano sound like a Steinway piano of that era for less than a few thousand dollars using non-Steinway parts.  Sukumar's alleged belief that Andersen's estimate for repairs to the 1919 Piano was an assertion that the 1919 Piano could be restored to contain only non-Steinway parts for less than a few thousand dollars is not justifiable.  Andersen made no such affirmative statement.  We affirm the trial court's order as to the second cause of action for negligent misrepresentation.

*Fifth Cause of Action:  Breach of Oral Contract*

"The elements of a breach of oral contract claim are the same as those for a breach of written contract: a contract; its performance or excuse for nonperformance; breach; and damages."  (*Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 453.)  " 'Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to

24

determine whether those obligations have been performed or breached.' (*Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613, 623.) 'To be enforceable, a promise must be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.' (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 770; see also *Robinson & Wilson, Inc. v. Stone* [(1973)] 35 Cal.App.3d [396,] 407.) 'Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.' (*Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 481; see also Civ. Code, § 1598; *Ladas v. California State Auto. Assn.*, *supra*, 19 Cal.App.4th at p. 770.) 'The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.' (Rest.2d Contracts, § 33, subd. (2); accord, *Weddington Productions, Inc. v. Flick* [(1998)] 60 Cal.App.4th [793,] 811.) But '[i]f . . . a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract.' (*Weddington Productions, Inc. v. Flick*, *supra*, 60 Cal.App.4th at p. 811.)" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 209.)

Sukumar's arguments in support of his breach of oral agreement cause of action comprise a single page in which he melds his fifth cause of action for breach of oral contract and his sixth cause of action for negligence. He does not include the elements required to prove either cause of action. The opening brief makes several sweeping statements regarding Andersen's

25

allegedly deficient work, which are largely unsupported by specific evidence and are devoid of citations to the record. There are only three complaints that Sukumar identifies with any specificity: (1) Andersen worked on multiple pianos simultaneously; (2) Andersen re-pinned new pianos; and (3) Andersen failed to collect sound samples from the pianos as agreed.

The single piece of evidence that Sukumar explicitly relies upon in the opening brief to support his argument that Andersen breached their agreement is "Spencer-Smith's email." Sukumar provides no identifying date or record cite for the email. Assuming that we are correct that the referenced email is Exhibit 6 attached to Lesic's Declaration, which was filed with Sukumar's opposition to the motion for summary judgment, it is not evidence of the parties' agreement. The email to Sukumar and Lesic from Spencer-Smith, dated April 9, 2015, purports to forward an email that Spencer-Smith sent to Andersen that morning, in which Spencer-Smith conveyed Sukumar's demands and concerns. It states that Sukumar expects Andersen to deliver documentation from Andersen's evaluation visit, including sound samples, and to complete work on two pianos. It also notes an alleged billing discrepancy. Spencer-Smith states, "I understand that you were required to [¶] –attend to one piano at a time [¶] – to establish a record of satisfaction with the client [¶] I am told that you have engaged in several pianos, simultaneously, despite being instructed to the contrary." There is no evidence that Spencer-Smith was privy to the piano maintenance agreement or personally familiar with its terms. The email expresses Spencer-Smith's understanding of Sukumar's position; it does not provide evidence of the terms of the agreement.

26

Sukumar makes very little effort to delineate the terms of his agreement with Andersen in his argument. In fact, he does not claim that Andersen agreed not to work on multiple pianos at once or that the parties agreed Andersen would not re-pin specific pianos. The opening brief states only that Andersen agreed to collect sound samples from the pianos and failed to do so. Lesic's declaration, which Sukumar does not mention in his argument, provides evidence that some of these terms were agreed-upon: the declaration states that Lesic instructed Andersen to work on the pianos one at a time and to record the sound of the pianos prior to working on them. The declaration further states that Andersen failed to follow these instructions. However, Sukumar provided no evidence of damages resulting from Andersen's failure to complete these two tasks. Absent such a showing, he cannot defeat summary judgment with respect to these terms. Finally, regarding the re-pinning of new pianos, there is no evidence that this ever occurred. Lesic's declaration states, "[Andersen] attempted to re-pin some brand new pianos . . . but I stopped him from doing so." Without evidence of an actual breach, let alone resulting damages, Sukumar cannot defeat summary judgment on this basis, either.

*Sixth Cause of Action: Negligence*

"To prevail in a negligence action, a plaintiff must show that the defendant owed a legal duty, the defendant breached that duty and the breach proximately caused injury to the plaintiff. [Citations.] 'Absent a legal duty, any injury is an injury without actionable wrong. [Citation.] "Duty, being a question of law, is particularly amenable to resolution by summary

27

judgment.  [Citation.]"  [Citation.]'  [Citation.]  . . . 'If there is no duty, there can be no liability, no matter how easily one may have been able to prevent injury to another. . . .  [T]he existence of the duty in the first place is a question of law for the court.  [Citation.]  The existence and scope of any duty, in turn, depends on the foreseeability of the harm, which, in that context, is also a legal issue for the court.  [Citation.]' " (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 396.)  " ' " 'An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.' " ' " (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 551.)

Sukumar has not set forth the elements of a cause of action for negligence.  He has not attempted to provide evidence that Andersen owed him a duty of care or what the standard of care would be.  Accordingly, we affirm the trial court's order of summary judgment as to the sixth cause of action for negligence.

## DISPOSITION

We affirm the judgment.  Tanya Ragir, executor of the estate of David Andersen, is awarded costs on appeal.
NOT TO BE PUBLISHED.

MOOR, J.

We concur:

RUBIN, P. J.                          BAKER, J.

28